# The Chicago, Rock Island & Pacific Railway Company

## v.

## Lawrence Harmon.

1. Practice—Assigning value.—Where the value of property injured is alleged by way of damages, it is not necessary to specially aver all the qualities that constituted such value.

2. Tran-portation of live stock—Valuable animals—Degree of care.—If a carrier has any special rules or custom, binding upon its servants, by which their care of live stock is to be proportioned to its value, it is the duty of the carrier to inquire of the shipper if the live stock, about to be shipped, possesses any special value By the law of the common carrier, the same degree of care is required to prevent destruction of animal life, whether of little or great value

3. A custom, limiting liability of carrier, against public policy.—A custom that a carrier shall not be liable for injury to, or loss, or destruction of live stock beyond the value of $100, is against public policy, as a custom which will excuse a carrier from acts of negligence, is invalid.

4. Notice of limitation—Not binding unless assented to by

C., R. I. & P. R. R. Co. v. Harmon.

SHIPPER.—Notice to the shipper of the adoption of a rule, that the carrier will not transport live stock unless the shipper signs a special contract, limiting the liability of the carrier, for loss or injury thereto, to $100, does not create a contract between the parties by which such rules become binding upon the shipper. The assent of the shipper must appear before he can be bound.

5. LIABILITY OF CARRIER FOR IMPAIRED CONDITION OF PROPERTY UPON ARRIVAL AT DESTINATION.—The liability of a common carrier for the impaired condition of property upon arrival at its destination, depends upon the nature of the commodity carried, and the cause of the deterioration in value or of the injury received, during its transit. If the loss or injury was the direct result of natural decay or any inherent infirmity in the article itself, the carrier is not liable. In the transportation of live stock, the carrier, in the absence of negligence, is not responsible for such injuries as occur, in consequence of the vitality of the freight.

6. INSTRUCTIONS SHOULD BE CLEAR AND ACCURATE WHERE EVIDENCE IS CONFLICTING.—Instructions should be clear, accurate and as harmonious as possible. Where an erroneous charge is given, but the evidence is so largely in favor of the prevailing party that the court can see the jury were not misled by the error, the judgment will be affirmed; but where the evidence upon the material points in the case is very conflicting and quite evenly balanced and the erroneous instructions may have had the effect of misleading the jury, the court will reverse the judgment.

7. MISLEADING INSTRUCTION.—Where the obligation to deliver a mare in good condition, if so received by the carrier, is made by the first branch of an instruction, as absolute as the duty to transport safely and to make delivery to the consignee, and there is no question but what the mare safely arrived, so far as the act of transportation was concerned, and was promptly delivered to appellee, the jury will be very likely to understand that the neglect of duty mentioned in the second branch of the instruction, referred to the failure of the carrier to deliver in as good condition as received, and that such failure was conclusive evidence of negligence in the carrier by which such condition was caused.

APPEAL from the Circuit Court of Peoria county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed December 28, 1882.

On the 5th day of July, 1881, the appellant received at its station at Ottawa, Ill., from one Neely, the agent of appellee, a mare and colt to be transported to Peoria, about seventy-five miles distant.

The animals were shipped in a box car under the superintendence of Neely and the agent of appellant at Ottawa. The car reached Peoria the next morning about 9 o'clock, and

the animals were delivered to appellee. It is claimed that the mare had become overheated in the car for want of sufficient ventilation, in consequence of which she died the succeeding day.

The declaration contains five counts, the first of which charges in substance, that the mare and colt were shipped in a box car, and that it was necessary to prevent them from overheating to keep the doors and windows partly open during transportation, and that the defendant caused the doors and windows to be closed, and in consequence the mare became overheated, sickened and died, and the colt, deprived of proper nourishment, stunted.

Second count alleges that the car was hot, and that the defendant detained the mare and colt one hour in Peoria unnecessarily, whereby the mare became overheated, etc. The third count alleges detention unnecessarily on the road. Fourth and fifth counts allege failure to furnish proper car, and failure to use proper care in transporting. There was evidence on the part of the plaintiff below tending to show that the mare when received at Peoria was in a bad condition from being overheated while in the car of the defendant; that in this condition she was led to the river by the servant of appellee for the purpose of giving her water, after which she was taken to appellee's home; she appearing sick, they threw cold water upon her and sent for one Doctor Pries, a veterinary surgeon; he directed a course of treatment under which she improved during the day, but on the next morning she was removed to a farm of appellee about two miles distant, when she was taken worse and died during the day.

It is claimed by the appellant and evidence given tending to show such to be the fact, that the car was a proper one, properly ventilated, and that the servants of the company used proper care to keep the car in that condition, and that the overheating of the mare was in consequence of the extremely hot weather and the condition of the animal itself, and that the death of the mare resulted from improper treatment after she was delivered to appellee.

In this condition of the evidence the court gave to the jury in behalf of the plaintiff the following instruction:

Given: Upon the part of the plaintiff the court instructs the jury, that if they believe from the evidence that on July 5, A. D. 1881, the plaintiff delivered, or caused to be delivered, to the defendant, in good order and condition, for transportation by its said line of railway from Ottawa, in La Salle county, to the said city of Peoria, the said mare and colt mentioned in said declaration, that it then and there became the duty of the defendant to safely transport and deliver the said mare and colt at said Peoria, in good order and condition.

And if the jury further believe from the evidence that the defendant neglected its duty in that behalf, and that by reason of such negligence the said mare and colt were injured or destroyed without fault of the plaintiff, then the jury should find for the plaintiff, and fix his damages at such sum, not exceeding the amount claimed in the declaration, as they believe from the evidence to have been the value of the said mare at the time of her said death, and the amount of damage, if any, to said colt on account of the death of said mare.

The plaintiff recovered $433, and the defendant below appealed.

Mr. THOS. F. WITHROW and Mr. H. W. WELLS, for appellant; that appellee must offer proof to connect appellant with the cause of the mare's death, cited Lehman v. City of Brooklyn, 29 Barb. 234; P. C. & St. L. R. R. Co. v. McMillan, Rep. April 19, 1882, p. 506.

When a verdict is given contrary to the evidence, this court will grant a new trial: Lowry v. Orr, 1 Gilm. 70; Scott v. Blumb, 2 Gilm. 595; Culbertson v. City of Galena, 2 Gilm. 129; Gordon v. Crooks, 11 Ill. 142; Keaggy v. Hite, 12 Ill. 99; Baker v. Pritchett, 16 Ill. 66; Higgins v. Lee, 16 Ill. 495; Corgan v. Frew, 39 Ill. 31; Chase v. De Bolt, 2 Gilm. 371; Boyle v. Levings, 24 Ill. 223; Clement v. Bushway, 25 Ill. 200; C. & R. I. R. R. Co. v. McKean, 40 Ill. 218; Ad-

dems v. Suver, 89 Ill. 482; Summers v. Stark, 76 Ill. 208; Stickle v. Otto, 86 Ill. 161; Bell v. Gordon, 86 Ill. 501.

A carrier in the absence of negligence, is not liable for injuries which occur in consequence of the vitality of freight: M. C. & W. R. R. Co. v. McDonough, 21 Mich. 165; Rexford v. Smith, 52 N. H. 355; Craigin v. N. Y. C. R. R. Co. 51 N. Y. 63; Mynard v. Syracuse, etc., R. R. Co. 71 N. Y. 180; Penn. v. Buffalo & E. R. R. Co. 49 N. Y. 209; Clark v. R. & S. R. R. Co. 14 N. Y. 571; Kimball v. Buffalo & B. R. R. Co. 26 Vt, 242; Parrot v. Wells, 15 Wall. U. S. 524; O. & M. Ry. v. Dunbar, 20 Ill. 623; I. & St. L. Ry. v. Jurey, 8 Bradwell, 160.

If the practical effect of the conduct of the shipper is to cause an article of great value to resemble one of less value, whereby the carrier is misled, it is fraud: Warren v. W. I. Co. 5 Robt. N. Y. 490; Orange Co. Bank v. Brown, 9 Wend. 85; Pardee v. Drew, 25 Wend. 459; The Nitro Glycerine Case, 15 Wall. U. S. 524: Hayes v. Wells, Fargo & Co. 23 Cal. 185; Southern Ex. Co. v. Everett, 37 Ga. 688: C. & Aurora R. R. Co. v. Thompson, 19 Ill. 587; Oppenheim v. U. S. Ex. Co. 69 Ill. 62; C. & A. R. R. Co. v. Shea, 66 Ill. 471; Hutch. on Carriers, § 503; Story on Bailments, § 15; Am. Ex. Co. v. Perkins, 42 Ill. 459; C. & A. Ry. Co. v. Shea, 66 Ill. 471.

As to the effect of the printed notice, brought to the knowledge of appellee: Morrison v. Brown, 83 Ill. 562; Erie Ry. Co. v. Wilcox; 84 Ill. 239; R. S. Ill. 1853, Private Laws, p. 48.

A juror must be absolutely impartial and indifferent between the parties: 2 Blackstone Com. 363; Freeman v. The People, 4 Denio, 23; Hathaway v. Helmer, 25 Barb. 31; Harrisburg Bank v. Forster, 8 Watts, 306; The People v. Bodine, 1 Denio, 306; Davis v. Allen, 11 Pick. 469; State v. Anthony, 7 Ired. 234; Hinchman v. Clark, Coxe. 446; Bank v. Hart, 3 Conn. 491; Ga. R. R. Co. v. Hart, 60 Ga. 556.

If a party accepts a juror in ignorance of his disqualifications, a new trial will be granted: Burroughs v. State, 33 Ga. 408; Hawkins v. Andrews, 39 Ga. 118; State v. Groom, 10 Ia. 316; Pa. R. R. Co. v. Howard, 20 Mich. 18; Queen v.

Justice of Hartsfordshire, 6 Q. B. 735; Queen v. Justice of Suffolk, 18 Q. B. 416.

A well-known usage and custom is presumed to enter into and form part of all contracts to which the custom applies: Lyon v. Culbertson, 83 Ill. 33; Bissell v. Ryan, 23 Ill. 566; Munn v. Burch, 25 Ill. 35; Wilson v. Bauman, 80 Ill. 495; U. S. Life Ins. Co. v. Advance Co. 80 Ill. 552.

Mr. George B. Foster, for appellee; that where a railroad company undertakes to transport live stock, it must furnish good and sufficient cars to carry the same, cited I. B. & W. Ry. Co. v. Strain, 81 Ill. 504; St. L. & S. E. Ry. Co. v. Dorman, 72 Ill. 504.

Where unreasonable delay in delivery is shown, carrier, to discharge itself, must show reasonable excuse, not the consequence of negligence: Galena v. Chicago U. R. R. Co. & Rae, 18 Ill. 488; Am. M. U. Ex. Co. v. Schier, 55 Ill. 141; I. C. R. R. Co. v. Waters, 41 Ill. 73.

If the cars were unfit or unsafe vehicles, carrier would be responsible, even although there was an agreement that it should not be liable therefor: Railroad Co. v. Pratt, 22 Wall. 123.

A common carrier can not limit by contract, its liability to deliver goods safely at their destination: I. & St. L. Ry. Co. v. Jurey, 8 Bradwell, 160.

Even if the acceptance of the property was special, burden is upon the carrier to show no negligence on its part: Shriver v. Sioux City R. R. Co. 24 Minn. 506; Bissell v. Price, 16 Ill. 408.

The liability of a carrier to deliver animals is not different from that where the delivery of merchandise is concerned: St. L. & S. E. R. R. Co. v. Dorman, 72 Ill. 504; I. B. & W. R. R. Co. v. Strain, 81 Ill. 504; C. & A. R. R. Co. v. Erickson, 91 Ill. 613.

If the damage is unconnected with the conduct or propensities of the animals, the carrier is liable: Clark v. R. S. R. R. Co. 14 N. Y. Rep. 571; Smith v. N. Y. C. R. R. Co. 29 Barb. 135; Golden v. Panama R. R. Co. 30 Penn. 246; Welsh v. P. & H. W. R. R. Co. 10 Ohio, 73.

As to a common carrier limiting its liability by notice: Fisk v. Chapman, 2 Kelly, 360; Cole v. Goodwin, 19 Wend. 254; Hollister v. Nowlan, 19 Wend. 235; Moses v. Boston & M. R. R. Co. 32 N. H. 523; N. J. Steam Mfg. Co. v. Merchant's Bank, 6 Howard, 344; 1 Smith's Leading Cases, 427–429.

As to a custom varying the liability of carrier: Cox v. Heisley, 19 Penn. 247; 1 Blackstone Com. 76.

A carrier is liable for the loss of a valuable package, although not informed of its value: Phillips v. Earle, 8 Pick. 182; Camden v. Baldauf, 16 Penn. 78.

Although evidence may have been conflicting, yet if it tends to sustain the issue, this court will not disturb it: Clifford v. Luhring, 69 Ill. 401; Reynolds v. Palmer, 70 Ill. 288; T. W. & W. R. R. Co. v. Moore, 77 Ill. 217; Wiggins Ferry Co. v. Higgins, 72 Ill. 515; Knightlinger v. Eagan, 75 Ill. 141.

PILLSBURY, P. J.  The point made that the court erred in allowing the plaintiff to show the special qualities of the mare which gave her the value alleged, because no allegation of special value is contained in the declaration, we do not consider tenable.

The value being alleged by way of damages for the loss of her, it was not necessary to specially aver all the qualities that constituted such value.

It is next objected that if the mare was possessed of such qualities that gave her greater value than ordinary animals, the plaintiff should have notified the defendant of the fact at time of shipment, and in not doing so a fraud was committed upon the carrier.

There is nothing in this record tending to show that Neely, the agent of appellee used any means to deceive the appellant as to the value of the mare and no inquiries were made by its agents regarding her qualities or value.

The animal was seen by the agent at the time of shipment, and if the carrier had any special rules or custom binding upon its servants by which their care of the animal was proportioned to its value, we think they should have inquired

of the shipper whether she possessed any special value before assuming the duties of a common carrier.

If the record showed that deception had been practiced upon the carrier to induce a belief that her value was less than now claimed, the question presented would be different and the cases cited might be considered as sustaining the position contended for.

Besides if the carrier is liable in this action it is upon the ground that because of its negligence the mare became so overheated, or smothered, as counsel puts it, as to cause the injury complained of, and there is nothing appearing to show that she would not have been likewise injured if she had not been of such value, neither is it probable that the result would have been any different if the facts had been stated to the agent concerning her value as a breeder of fine stock.

The point made would also seem to imply that a less degree of care is required to prevent the suffocation of an animal worth say $100, than if the same animal was worth three times as much, a position which we can not sustain.

We think the same degree of care is required by the law of a common carrier to prevent destruction of animal life in the one case as in the other.

Appellant sought to prove that there was a custom among railroad companies that the carrier should not be liable for injury to, or loss or destruction of live stock beyond the sum of $100, but the court excluded such offered proof. In this there was no error.

A custom which would excuse them from acts of negligence would be against the policy of the law and can not therefore be held valid, and it has been held that a common carrier can not even contract against its own negligence or that of its servants: Adams Ex. Co. v. Stettaners, 61 Ill. 184; Ill. Cen. R. R. v. Adams, 42 Ill. 474; Western Trans. Co. v. Newhall, 24 Ill. 466; Railroad Co. v. Pratt, 22 Wall. 123.

It is also urged that the appellant had adopted certain rules and regulations, and that the appellee had notice thereof, that the company would not carry live stock unless the shipper signed a special contract limiting the liability of the appellant

for loss or injury thereto to the sum of $100. Notice of the adoption of such rule does not create a contract between the parties by which such rules become binding upon the shipper. Notwithstanding such notice he may insist that his goods shall be received and transported subject to all the incidents of the carrier's employment: Western Trans. Co. v. Newhall, *supra*, and the assent of the shipper to the limitation of liability must appear before he can be held bound: Anchor Line v. Dater, 68 Ill. 369. In this case no contract was signed and there is no evidence that the appellee ever assented to any limitation of the carrier's liability.

The first instruction given for the plaintiff being the only one asked upon the merits of the case, we consider improper, in view of the character of the injury to the mare and the evidence introduced, touching the cause of the injury and which the jury had a right to consider upon that question. It will be noticed that the only injury complained of is that the animal was overheated and that this was caused by the act of the defendant in failing to furnish a suitable car, or for want of a proper degree of care upon the part of the defendant in promptly forwarding, and to prevent the car from becoming closed during the transportation to Peoria.

There was evidence tending to show that the car was a suitable one and properly arranged for allowing sufficient air to the animal, and that the car was kept in that condition, and that if the mare was overheated it was in consequence of an inherent infirmity incapacitating her to withstand the extreme heat of the weather. As the case must be again tried we shall express no opinion upon the weight of the evidence upon this material point in the case.

The obligation to deliver the mare in good condition if so received by the carrier is made by the first branch of the instruction as absolute as the duty to transport safely, and to make delivery to the consignee, and there being no question made but the mare safely arrived so far as the act of transportation was concerned, and was promptly delivered to the appellee upon the arrival of the train, the jury would be very likely to understand that the neglect of duty mentioned in

the second branch of the instruction referred to the failure of the carrier to deliver in as good condition as received, and that such failure was conclusive evidence of negligence in the carrier by which such condition was caused, especially as the instruction characterizes it as "such negligence."

At common law a common carrier was held as insuring the safe arrival at its destination of the commodity entrusted to it for transportation against all acts except what was denominated the acts of God and of the public enemy, but this strict accountability did not include the *condition* of the article at the time of its arrival as compared with its condition when received.

Their liability as to responding in damages for an *impaired* condition of the property upon its arrival at its destination, depended upon the nature of the commodity carried, and the cause of its deterioration in value, or of the injury it had received during its transit.

If the loss or injury was the direct result of natural decay or any inherent infirmity in the article itself, the carrier was excused. Thus it has been said that the carrier was not responsible for the loss of molasses escaping through vent holes necessary to prevent the bursting of the casks, for the evaporation of liquids, or the natural decay of fruit or vegetables: Angell on Carriers, Sec. 211, and cases cited. Resting upon the same principle, is the exemption from liability where the injury to live animals is occasioned by their natural propensities toward themselves or toward each other during transit.

The escape of steam, the rattle and jar of the car, or the noise of the train even when properly operated, may frighten some of them and they be injured in value thereby, the vicious and unruly may injure the others, some may refuse to eat or drink, and in a variety of ways the very means adopted for their transportation may, through the natural disposition of the animals, or their inherent infirmity, work greater or less injury to them, when no negligent act of the carrier whatever has contributed thereto.

So, too, in the transportation of live stock, the carrier in the absence of negligence is not responsible for such injuries as

occur in consequence of the *vitality* of the freight. It would seem that non-liability for injury or damage occurring to live stock under the circumstances supposed, is not to be considered as an exception to the common law rule of liability engrafted upon it by the courts, since the introduction of railroads into the field of common carriers, but rather as the application of a well-known principle of the common law, as old as the rule itself to a species of freight which no common carrier, until recent times, transported by land.

The character of the property carried and the liability of its inherent qualities to work loss or injury to itself, unaffected by any act of the carrier, was always considered in determining whether the carrier was responsible for an impaired condition of the freight, and this principle should, in furtherance of justice, be applied to every new article, introduced by discovery or invention, into the commerce of the world, or to any new species of freight becoming the subject of transportation by a common carrier, and which, in its nature, possesses qualities which under the operation of natural laws may without any fault of the carrier cause a diminution in quantity or value or its entire loss or destruction.

But whether the exemption in case of live stock is to be treated as an exception to the rule on account of the peculiar character of the freight, or as an extension of the rule to the transportation of animals as a new business, it is perhaps unnecessary to determine, as in either case the liability of the carrier remains the same.

Loss and injury thus occasioned are matters of defense for the carrier, and he will not be held liable for a failure to deliver such stock in good condition if he can show that he has furnished suitable means of carriage, and during the time the stock has been in his possession, he has exercised that degree of care required by the nature of the property. Smith v. Railroad Co. 12 Allen, 531. Now in this case if the mare was overheated, in consequence of her inability to bear the hot weather, and the appellant did not by any act of negligence contribute to such result, it can not be held liable.

The instruction is also erroneous in charging the jury that

if the animal was injured by the defendant the plaintiff was entitled to recover her value, thereby assuming that the injury was the cause of her death, when there is considerable evidence in the case tending to show, and which should have been submitted to the jury, that the cause of her death was the improper treatment she received after she was delivered to the appellee. If the appellee was negligent in his treatment of her, and the damage was thereby increased, the carrier should not be held responsible for such damages thus resulting.

The instructions given for the appellant are as full and favorable as it had any right to demand or expect, and if we could see that the verdict was not infected by the erroneous instruction of the appellee, we should not be inclined to reverse, but as the evidence is very conflicting upon the material points in the case and quite evenly balanced, the instructions may have had the effect to mislead the jury and incline them to find the verdict they returned.

Such being the state of the evidence the instructions should have been as clear, accurate and harmonious as possible. Quinn v. Donovan, 85 Ill. 194; Am. Ins. Co. v. Crawford, 89 Ill. 62; Cushman v. Cogswell, 86 Ill. 62; Wabash R'y Co. v. Henks, 91 Ill. 407; Swan v. The People, 98 Ill. 610.

Where the evidence is so largely in favor of the prevailing party that the court can see that the jury were not misled by an erroneous charge of the court, the judgment will be affirmed notwithstanding such error. Hall v. Sronfe, 52 Ill. 421; Watson v. Woolverton, 41 Ill. 241; Smith v. Binder, 75 Ill. 492; but if it does not clearly appear that no injury resulted from the error, a reversal of the judgment will follow. Ruff v. Jarrett, 94 Ill. 475.

For the reason stated the judgment will be reversed and the cause remanded.

Judgment reversed.

LACEY, J., dissenting. I am unable to concur in the decision of the majority of the court. The appellee's instruction, one only being given, might be open to the criticism passed

upon it by the majority of the court if it stood by itself, as tending to mislead the jury, in respect to the appellant's liability as a common carrier in the transportation of live stock, and in the appellee's right to recover damages arising from other causes than the negligence and default of appellant, notably those resulting from the mismanagement and default of appellee himself after receiving the mare and colt in Peoria.

With all due respect to my brethren, I am unable to see how it is within the bounds of reasonable probability that the jury could be so misled by the instruction, in view of the fact that at the instance of the appellant, the court instructed the jury as to the law, touching its liability as fully and favorably as could properly be asked.

By appellant's instructions, two, five, six and nine, the jury was expressly told in various forms, that it would not be liable for any loss arising from the overheating of the mare, unless such overheating arose from its fault or negligence in not furnishing a suitable car, or in not taking proper care of the mare and colt, while being transported; and by the appellant's ninth instruction, the jury were told that a common carrier is not liable for injury to property in its care, arising through inherent defects, or causes naturally existing in the freight, and by instructions eight and thirteen given for appellant, the jury were told that if the death of the mare and injury to the colt, was the result of the neglect of appellee in not taking proper care of her, or in treating her improperly after he received her, then the appellant was not liable for such death and injury.

In some instances it is not easy to see that imperfections and inaccuracies in instructions will not mislead the jury, but in this case it seems to me that the instructions given on both sides taken as a series can be easily harmonized, and that a jury of ordinary intelligence could not be misled as to the law.

The first clause of the appellee's instruction states as a matter of law that it was the duty of appellant to transport and deliver the mare and colt at Peoria in good order and condition.

This undoubtedly was its general duty and there appears to

be no impropriety in so telling the jury.   The instruction does not say that nothing could excuse this duty save the act of God or the public enemy, or that it was an absolute inexcusable duty.

The second clause tells them that if appellant neglected such duty, and by reason of such negligence the mare and colt were injured or destroyed without the fault of appellee, the jury should find for him.

It is supposed that the jury would understand by the instruction that the court intended to tell them that as a matter of law, it was the duty of the appellant to deliver the mare and colt and that no excuse could be given for non-delivery, and that liability would exist if he failed to deliver the property, that it was absolute and inexcusable negligence not to deliver.   But the instruction does not say so.   It is only supposed that the jury might be misled to think so.   In summing up the case the jury would inquire in what negligence of duty to deliver consisted.

There was a large amount of evidence taken to show that the car in which the mare and colt were shipped was fit for the purpose and that the stock was loaded by appellee's agent, and that reasonable care was taken by appellant to prevent injury to it in its transportation.   Then the jury were told in specific instructions given for appellant in what negligence of duty to safely deliver consisted.

That it was bound to furnish a safe and suitable car fit for the purpose, and was to take reasonable care to save the stock from injury while being shipped, and that a neglect of this only would alone render it liable.   The same may be said in regard to damages that may have accrued on account of appellee's fault in not taking proper care of, or in mistreating the stock after he received it.   Under such a series of instructions how was it possible the jury could be misled as to the law? It seems to me clearly they were not.

There being no other perceivable error I think the judgment should be affirmed.