### Charles Libro, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

1. CARRIERS, § 248*—*when evidence in action for loss of shipment does not show carrier at fault.* In an action for damages for the death of calves shipped by the plaintiff over the defendant's railroad, evidence *held* to show that the defendant did not load the shipment and that the loss was not caused by any fault on its part.

2. CARRIERS, § 232*—*when carrier not liable for loss of shipment of cattle.* A railroad company is not liable for loss of part of a shipment of cattle resulting from the cars being overcrowded where it was overcrowded by the shipper or persons acting for him.

3. CARRIERS, § 228*—*when carrier not liable for death of cattle shipped.* A railroad company *held* not liable for the death of calves shipped over its line where the loss was caused by their own lack of vitality, and not by any fault or negligence of or the violation of any duty by the carrier.

Appeal from the Circuit Court of Macoupin county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1916. Reversed. Opinion filed October 13, 1916.

GEORGE B. GILLESPIE, for appellant; F. L. LITTLETON, A. H. BELL and GILLESPIE & FITZGERALD, of counsel.

PEEBLES & PEEBLES, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellee procured a judgment against appellant for the sum of seventy-five dollars in an action of trespass on the case to recover the value of five calves shipped from the National Stockyards at East St. Louis to the Town of Dorchester, Illinois. A trial was had before the court without a jury.

At 11 o'clock on the morning of May 29, 1913, appellee bought sixty-eight head of calves through the commission firm of D. C. Smith Company, at the National Stockyards at East St. Louis. These calves were very poor, thin and weak. They had come from a quarantined area in one of the southern states and had to be dipped in creosote before they could be shipped. The evidence tends to show that this dipping made them still weaker. Appellee paid the commission firm for the calves and for the freight from East St. Louis to Dorchester, Illinois. The commission firm took the calves to the shipping pen in the stockyards from which they were loaded into a car and the stockyards company switched the car onto a siding connecting with the tracks of appellant company, at which point, about 5:20 p. m., the engine of appellant company took the car to what is called the Brooklyn yards, where it arrived about 6:10 p. m. At this point it was attached to appellant's train and proceeded to its destination where it arrived a few hours later. When the car reached the Brooklyn yards some of the train crew discovered that nine of the calves had fallen down in the car. They succeeded in getting six of them onto their feet but three of them were too weak to stand and they were removed to one corner of the car. The train arrived at Dorchester about 1:15 a. m., but appellant did not unload the calves until about 6 a. m., at which time three were found to be dead and two others were so weak that they died shortly thereafter.

There is a provision in the shipping receipt, which

appellee voluntarily signed, that the cattle should be loaded, fed and watered while being transported, and unloaded at the sole risk and expense of the shipper.

The trial court by its rulings on the propositions of law presented held, in substance, that appellant having failed to prove that appellee knew and consented to these conditions in the receipt, he was not bound thereby and that it must be presumed that the death of the calves resulted from the negligence of appellant on the theory that it is the absolute duty of a carrier to safely carry and deliver all property received by it for transportation.

It is insisted by appellant that the rule, that the burden of showing that the shipper knew and assented to a limitation of a carrier's common-law liability in a shipping receipt or bill of lading is upon the carrier, is based upon the construction by the courts of section 96, ch. 114 (J. & A. ¶ 8845), and section 1, ch. 27, Rev. St. (J. & A. ¶ 2165), and that said sections have been repealed by implication by the passage of the Universal Bill of Lading Act in force July 1, 1911 (J. & A. ¶ 2168) and the State Public Utilities Act in force July 1, 1913 [Cal. Ill. St. Supp. 1916, ¶ 8686(1) et seq.], and is no longer the law in this State. In our opinion it is unnecessary to determine this question for the reason that this rule has no application to the facts in this case.

There is no evidence whatever in the record tending to show that appellant loaded the calves into this car or that they were injured by any act of negligence of its servants. On the contrary, the evidence shows conclusively that the calves were not loaded by appellant nor injured through its fault or negligence. There is nothing in the evidence which tends to show that either the commission firm or the stockyards company acted as the agent for appellant in the loading of the calves, and appellant is not liable for the fact, if it be a fact,

that the car was overcrowded by the shipper or persons acting for him. *Ohio & M. R. Co. v. Dunbar*, 20 Ill. 624; *Pennsylvania Co. v. Kenwood Bridge Co.*, 170 Ill. 645.

The common-law liability of a carrier has never been applied where the damage to the commodity was the result of any inherent infirmity in the article itself. In the case of *Chicago, R. I. & P. R. Co. v. Harmon*, 12 Ill. App. 54, it was held: "So, too, in the transportation of live stock, the carrier in the absence of negligence is not responsible for such injuries as occur in consequence of the vitality of the freight. It would seem that nonliability for injury or damage occurring to live stock under the circumstances supposed, is not to be considered as an exception to the common-law rule of liability engrafted upon it by the courts, since the introduction of railroads into the field of common carriers, but rather as the application of a well-known principle of the common law, as old as the rule itself, to a species of freight which no common carrier, until recent times, transported by land." In the case of *Illinois Cent. R. Co. v. Brelsford*, 13 Ill. App. 251, where a recovery was sought for the injury to a mare in transportation, the court said: "Thus there was evidence tending to show that the injury, whether from sickness or from violence, was not the effect of any fault or negligence of the defendant in respect to the means or manner of her carriage, and so, by necessary inference, that it was due to her own viciousness or restlessness, excited by the carriage, however careful, or by improper loading or tying by the plaintiff himself, or to other defects or causes originating in her vitality. For injuries thus occurring to live freight the law does not hold the carrier liable, since it is not the effect of a breach on his part of any promise or duty implied by his business. Hutchinson on Carriers, sec. 218; Wharton on Negligence, 616; *I. & St. L. R'y Co. v. Jurey*, 8 Bradwell, 160; *C., R. I. & P. R. R. Co. v.*

*Harmon,* 12 Bradwell, 54; *Smith v. Railroad Co.,* 12 Allen, 531; *Mynard v. S. B. & N. Y. R. R. Co.,* 71 N. Y. 180.''

The manifest weight of the evidence is that the deaths of the five calves were caused by their own inherent lack of vitality and not through any fault or negligence of or the violation of any duty by appellant. For the reasons indicated the judgment is reversed.

*Reversed.*